UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ABEID ARMOUR, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| COUNTRY CLUB HILLS, COUNTRY ) | |
| CLUB HILLS OFFICERS JOHN SILAS ) | Judge Joan B. Gottschall |
| (#857), GUIVEDA FRANCOIS (#108), ) | |
| BRIAN ZARNOWSKI (#819), JOSEPH ) | Case No. 11 C 5029 |
| WILLIAMS (#814), J. STRAYER (#866), ) | |
| DORLA THOMPSON (#860), ) | |
| DETECTIVE DEMPSEY, FORMER ) | |
| COUNTRY CLUB HILLS POLICE CHIEF ) | |
| REGINA EVANS, and UNKNOWN ) | |
| COUNTRY CLUB HILLS POLICE ) | |
| OFFICERS ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION & ORDER

On April 5, 2013, Abeid Armour filed a fourteen-count Third Amended Complaint against the City of Country Club Hills ("the City"), various City police officers, and former Country Club Hills Police Chief Regina Evans,[1] asserting claims pursuant to 42 U.S.C. § 1983 and state law. Armour's claims stem from an incident on July 24, 2010, during which he was shot by a police officer, then charged with attempted murder, of which he was eventually acquitted. Now before the court are two motions. Evans moves to dismiss all claims in the Third Amended Complaint against her, pursuant to Federal Rule of Civil Procedure 12(b)(6). The City and City law enforcement officers John Silas, Guiveda Francois, Brian Zarnowksi,

---

[1] Armour's claims against Cook County and Assistant State's Attorney Sylvie Manaster were previously dismissed pursuant to an agreement between the parties.

Joseph Williams, J. Strayer, Dorla Thompson, and Detective Dempsey (collectively, "the City Defendant officers") move to dismiss Counts 13 and 14 of the Third Amended Complaint, both of which are claims against the City pursuant to *Monell v. Department of Social Services of New York*, 436 U.S. 658 (1978). For the reasons that follow, the motions are granted in part and denied in part. The court denies Evans's motion to dismiss Counts 9 and 10, but clarifies that the claims in those counts may proceed only under a *Brady* theory. Armour's claim against Evans in Count 14 is dismissed. The City's motion to dismiss Count 13 is granted, while its motion to dismiss Count 14 is denied.

## I. BACKGROUND

For purposes of the motions to dismiss, the court accepts the following facts alleged by Armour as true. *See, e.g.*, *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007). At about 1:30 a.m. on July 24, 2010, Officer Silas fired at least six bullets at Armour, two of which struck him in the side. Officer Francois was present at the shooting.

To cover up the unjustified shooting, Officers Silas and Francois concocted false charges against Armour. Prior to the initiation of any criminal charges, City Defendant officers coerced false testimony from several eyewitnesses. The officers seized six teenagers at the scene of the shooting and held them for over sixteen hours before they were interviewed. Evans was present at the police station when the witnesses were detained. She was aware that the City officers were threatening the witnesses with criminal charges unless they gave statements consistent with Officer Silas's version of events, and she encouraged them to do so.

Armour alleges that Officers Silas and Francois conspired with Evans and the other City Defendant officers to charge and prosecute him. The officers failed to investigate the shooting, included false statements in police reports, and destroyed or hid material evidence. Officer

Williams wrote false reports summarizing his interview with Officer Silas the morning after the shooting. Officer Strayer failed to properly investigate the shooting and created false reports regarding his attempts to retrieve video evidence of the shooting on July 25, 2010. Officers Thompson and Dempsey interviewed Armour at the hospital on July 24, 2010, fabricated a statement which they attributed to Armour, failed to record Armour's exculpatory statements, and created false reports regarding their interview with Armour. The officers knew that their reports would be relied upon by prosecutors.

Officer Zarnowski detained teenage witnesses and coerced them into giving false statements about the shooting, signed the coerced statements, failed to record witness statements which exculpated Armour, created false reports regarding witness statements and exculpatory evidence, created false reports about statements given by Silas and Francois, and conducted suggestive photo arrays. Officer Zarnowski interviewed Armour at the hospital on July 25, 2010, failed to record exculpatory statements by Armour, and did not stop questioning Armour when he asked for an attorney. Officer Zarnowski created false reports concerning his interview with Armour and testified based on those false reports before the grand jury and during Armour's September 2011 criminal trial.

Armour alleges that, as the City Defendant officers' supervisor, Evans encouraged them to present false reports, testify falsely to the grand jury and at Armour's trial, hide exculpatory evidence, and fail to properly investigate the charges against Armour. She did so in order to protect the City and the City Defendant officers from liability.

Relying on the officers' reports and the written statements of the witnesses, the Cook County State's Attorney's Office approved felony charges of attempted murder against Armour. Armour was formally indicted for the attempted murder of a police officer on August 17, 2010.

Armour spent nearly fourteen months as a pretrial detainee at Cook County Jail. The City Defendant officers were in possession of an investigative report prepared by the Illinois State Police Public Integrity Task Force, which contained exculpatory evidence, but they failed to turn these documents over to Armour. Armour was found not guilty of all charges against him on September 15, 2011.

Armour filed a complaint in this court on July 25, 2011. He filed a Third Amended Complaint on April 4, 2013. Based on the alleged facts summarized above, Armour asserts the following claims in the Third Amended Complaint: (1) § 1983 Excessive Force against Officer Silas; (2) § 1983 Unlawful Seizure/False Arrest against the City Defendant officers; (3) § 1983 Failure to Intervene against Officer Francois; (4) Battery against the City; (5) Assault against Officer Silas and the City; (6) Malicious Prosecution; (7) Intentional Infliction of Emotional Distress; (8) state-law Civil Conspiracy; (9) § 1983 Civil Conspiracy; (10) § 1983 Due Process; (11) Respondeat Superior Liability against the City; (12) payment of tort judgment by the City pursuant to Illinois law; (13) a *Monell* "custom and practice" claim against the City; and (14) a *Monell* "policymaker" claim against the City and Evans.

## II. LEGAL STANDARD

A motion to dismiss pursuant to Rule 12(b)(6) should be granted if Plaintiffs fail to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The factual allegations in a complaint must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555-56; *see also Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010) ("[P]laintiff must give enough details about the subject-matter of the case to present a story that holds together."). For purposes of a motion to dismiss, the court takes all facts alleged in the complaint as true and draws all

reasonable inferences from those facts in the plaintiff's favor, although conclusory allegations that merely recite the elements of a claim are not entitled to this presumption of truth. *Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011).

### III. ANALYSIS

**A. Evans's Motion to Dismiss**

The Third Amended Complaint adds Evans as an individual defendant. She moves to dismiss all claims against her in the Third Amended Complaint. In response, Armour clarifies that he has not named Evans as a defendant in Counts 2, 4, 5, 6, 7, and 8. The claims alleged against Evans are thus the § 1983 due process and conspiracy claims in Counts 9 and 10, and the *Monell* "policymaker" claim in Count 14, which names both Evans and the City.

    1. § 1983 Conspiracy and Due Process claims (Counts 9 and 10)

Count 9 of the Third Amended Complaint alleges that the City Defendant officers, "among themselves, and with Defendant Evans, . . . formed an agreement to falsely arrest and illegally seize Plaintiff in violation of his constitutional rights and deprive Plaintiff of his right to a fair trial." (Third Am. Compl. ¶ 85.) Count 10 alleges a violation of the Due Process Clause pursuant to § 1983. It is well-established that "conspiracy is not an independent basis of liability in § 1983 actions." *Smith v. Gomez*, 550 F.3d 613, 617 (7th Cir. 2008). Rather, a conspiracy claim depends upon an underlying constitutional violation. The court must therefore determine whether Armour has alleged an underlying violation that can support a § 1983 conspiracy claim against Evans.

The conspiracy claim against Evans is time-barred insofar as it is based on Armour's alleged false arrest. The applicable statute of limitations for a § 1983 claim in Illinois is two years. *Woods v. Ill. Dep't of Children and Family Servs.*, 710 F.3d 762, 768 (7th Cir. 2013).

Armour's false arrest claim accrued when he knew of his injury and had the ability to file a lawsuit about the injury. *Savory v. Lyons*, 469 F.3d 667, 672 (7th Cir. 2006); *see also Wallace v. Kato*, 549 U.S. 384, 388 (2007) (explaining that a plaintiff "could have filed suit as soon as an allegedly wrongful arrest occurred . . . , so the statute of limitations would normally commence to run from that date"). Armour was indicted by a grand jury in August 2010, but he did not file a complaint against Evans until April 5, 2013, more than two years later.

As alleged, however, the conspiracy claim is based not just on false arrest, but on due process violations. Those alleged violations also form the basis of Count 10. Armour alleges that the defendants fabricated evidence that led to his prosecution. He also alleges that the defendants suppressed exculpatory evidence material to the decision to prosecute him for first-degree murder. Those claims did not accrue at the time of Armour's arrest, but at the time of his acquittal on September 15, 2011, and are therefore timely.

Insofar as the due process and conspiracy claims in Counts 9 and 10 are based on evidence fabrication, they do not state federal due process claims. A claim of evidence fabrication may proceed only as a state-law malicious prosecution claim. The Seventh Circuit has rejected plaintiffs' arguments that evidence fabrication by police officers violates the Due Process Clause as improper attempts at "shoe-horning" Fourth Amendment and malicious prosecution claims "into the more general protections of the Fourteenth Amendment." *Fox v. Hayes*, 600 F.3d 819, 841 (7th Cir. 2010) (citing *Brooks v. City of Chi.*, 564 F.3d 830, 833 (7th Cir. 2009), and *McCann v. Mangialardi*, 337 F.3d 782, 786 (7th Cir. 2010)). And the Seventh Circuit does not recognize federal malicious prosecution claims where state tort law supplies a similar cause of action. *Newsome v. McCabe*, 256 F.3d 747, 750 (7th Cir. 2001) ("The existence of a tort claim under state law knocks out any constitutional theory of malicious prosecution.").

Thus, a plaintiff "cannot invoke the substantive due process clause where state laws provide an adequate postdeprivation remedy for the complained-of conduct." *Fox*, 600 F.3d at 841.

Armour argues that he has also pleaded a due process violation under *Brady v. Maryland*, 373 U.S. 83 (1963), based on the suppression of exculpatory and impeaching evidence material to the decision to prosecute him. Under *Brady*, the government violates the Due Process Clause when it "fails to disclose evidence materially favorable to the accused." *Mosley v. City of Chi.*, 614 F.3d 391, 397 (7th Cir. 2010) (citing *Youngblood v. West Virginia*, 547 U.S. 867, 869 (2006)). The duty to disclose "extends to the police and requires that they similarly turn over exculpatory . . . evidence to the prosecutor." *Carvajal v. Dominguez*, 542 F.3d 561, 566 (7th Cir. 2008) (citing *Youngblood*, 547 U.S. at 870). The elements of a *Brady* violation are: "(1) the evidence at issue is favorable to the accused, either being exculpatory or impeaching; (2) the evidence must have been suppressed by the government, either willfully or inadvertently; and (3) there is a reasonable probability that prejudice ensued—in other words, 'materiality.'" *Id.* at 566-67. Evidence is "suppressed" where it is not disclosed "in time for the defendant to make use of it," and it "was not otherwise available to the defendant through the exercise of reasonable diligence." *Id.* at 567. "[F]avorable evidence is material . . . if there is a 'reasonable probability' that, had the evidence been disclosed . . . the result of the proceeding would have been different." *Bielanski v. Cnty. of Kane*, 550 F.3d 632, 643-44 (7th Cir. 2008) (internal quotation marks omitted).

Evans argues that Armour has not stated a *Brady* claim because he has not identified with the requisite specificity what exculpatory evidence was allegedly concealed by the defendants. The court concludes, however, that at this stage in the proceedings, Armour's allegations about the City Defendant officers' false testimony, coerced witness statements, and failure to provide

documents are sufficient to state a *Brady* claim. Allegations that officers created false evidence, such as by creating false written reports and inducing witnesses to falsely identify a defendant, state a viable *Brady* claim when the evidence is withheld from a criminal defendant. *See, e.g.*, *Engel v. Buchan*, 710 F.3d 698, 709-10 (7th Cir. 2013).

Evans further argues that Armour cannot, as a matter of law, allege that he was prejudiced as a result of the alleged suppression of evidence, because he was acquitted of the charges against him. Evans points out that every circuit court that has squarely decided the issue has held that a defendant who was acquitted cannot maintain a *Brady* claim. The court acknowledges this trend. *See, e.g.*, *Morgan v. Gertz*, 166 F.3d 1307, 1310 (10th Cir. 1999) (finding no *Brady* liability because "a defendant who is acquitted cannot be said to have been deprived of the right to a fair trial"); *Flores v. Satz*, 137 F.3d 1275, 1278 (11th Cir. 1998) ("Plaintiff, however, was never convicted and, therefore, did not suffer the effects of an unfair trial. As such, the facts of this case do not implicate the protections of *Brady*."); *McCune v. City of Grand Rapids*, 842 F.2d 903, 907 (6th Cir. 1988) ("Because the underlying criminal proceeding terminated in appellant's favor, he has not been injured by the act of wrongful suppression of exculpatory evidence."); *cf. Taylor v. Waters*, 81 F.3d 429, 435-36 (4th Cir. 1996) (holding that no settled authority established the illegality of an officer's conduct in withholding exculpatory evidence from a plaintiff who was not convicted); *but see Smith v. Almada*, 640 F.3d 931, 940-41 (9th Cir. 2011) (Gould, J., concurring) (declining to decide whether a conviction is a prerequisite to a *Brady* claim).

Our circuit has not decided whether a *Brady* claim is viable when the plaintiff's trial resulted in an acquittal. *See Mosley*, 614 F.3d at 397-98 (reserving the question "for a later case"

8

in which the evidence withheld "would have altered the decision to go to trial"). Recently, in *Alexander v. McKinney*, the court stated:

> [W]e have expressed doubt that an acquitted defendant can ever establish the requisite prejudice for a Brady claim. *See* [*Bielanski*, 550 F.3d at 644]. Nevertheless, we have entertained the possibility that prejudice could be established if an acquitted defendant showed that disclosure of the suppressed evidence would have altered the decision to go to trial. *See* [*Parish v. City of Chi.*, 594 F.3d 551, 554 (7th Cir. 2009)]; *Bielanski*, 550 F.3d at 644-45.

692 F.3d 553, 556 (7th Cir. 2012); *see also Petrishe v. Tenison*, No. 10 C 7950, 2013 WL 5645689, at *4 (N.D. Ill. Oct. 15, 2013) (Holderman, J.) (concluding that plaintiff sufficiently alleged the existence and suppression of exculpatory evidence that would have altered the decision to go to trial).

In other words, a plaintiff may have a "*Brady*-type due process claim" where favorable evidence is suppressed by the government, and "'there is a reasonable probability that prejudice ensued.'" *Parish*, 594 F.3d at 554 (quoting *Carvajal*, 542 F.3d at 566-67). Although the Seventh Circuit has not squarely held as such, it has suggested that "prejudice" may include situations in which the government's decision to go to trial was altered by the suppression of the evidence. *Id*. Thus, at present, our circuit's case law does not foreclose Armour from arguing that the proceedings in his case were prolonged by the defendants' actions, in violation of his due process rights. In the absence of binding authority from the Seventh Circuit, this court will not dismiss the claim. The court expresses no opinion on Armour's ultimate ability to show that the prosecution would not have moved forward with the charges against him were it not for the defendants' withholding of evidence. But he has sufficiently alleged, to overcome a motion to dismiss, that the defendants' actions were material to the decision to prosecute him. The court therefore denies Evans's motion to dismiss Counts 9 and 10, but clarifies that the claims in those counts may proceed only under a *Brady* theory.

### 2. *Monell* "Policymaker" Claim (Count 14)

Armour names Evans as a defendant in Count 14 of the Third Amended Complaint, which alleges that she was a "final policy maker" for the County Club Hills Police Department. (Third Am. Compl. ¶ 115.) Evans asks the court to dismiss the claim against her, arguing that a *Monell* claim may proceed only against a municipality. In his response, Armour clarifies that Count 14 names Evans in her official capacity. That, however, makes the claims against Evans and those against the City redundant, and the court therefore dismisses the claim against Evans in Count 14. *See, e.g.*, *Jungels v. Pierce*, 825 F.2d 1127, 1129 (7th Cir. 1987) (explaining that "nothing was added" by suing a mayor in his official capacity along with the city).

### B. The City's Motion to Dismiss

The Third Amended Complaint adds two counts against the City pursuant to § 1983 and *Monell*. As a municipality, the City can be held liable under § 1983 only if the alleged constitutional violations resulted from the execution of one of its policies. *See Monell*, 436 U.S. at 694. This may be established by alleging: (1) an express policy that caused the constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled that it constitutes a policy; or (3) that the constitutional injury was caused by a person with final policymaking authority. *Lewis v. City of Chi.*, 496 F.3d 645, 656 (7th Cir. 2007). Count 13 of the Third Amended Complaint alleges that the City "had a custom and practice of encouraging Defendant officers to cover up excessive force, falsify sworn police reports, falsify testimony, and threaten witnesses." (Third Am. Compl. ¶ 111.) Count 14 alleges that the underlying constitutional violations committed by the City Defendant officers "were possible . . . because of the authority of final policy maker,

Defendant Evans, Chief of Police, who encouraged and directed" the City Defendant officers' conduct." (*Id*. at ¶ 115.) The City has moved to dismiss both counts.

    1. Statute of Limitations

The City first argues that both of Armour's *Monell* claims are time-barred because they arose at the time of Armour's arrest in 2010, but were not raised until the Third Amended Complaint was filed on April 5, 2013. At least some of the allegations in Counts 13 and 14 are based on the City Defendant officers' alleged false arrest of Armour and use of excessive force. As discussed above, those claims accrued when Armour knew of his injury and had the ability to file a lawsuit about the injury. *Savory*, 469 F.3d at 672; *Wallace*, 549 U.S. at 388. Under the two-year statute of limitations for § 1983 actions in Illinois, Armour's *Monell* claims based on false arrest and excessive force are untimely.

To avoid dismissal of the claims, the amended complaint must relate back to an earlier complaint, pursuant to Federal Rule of Civil Procedure 15(c)(1). The rule requires that "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B).

The court concludes that Armour's *Monell* claims relate back to the allegations in his earlier complaint, for purposes of the statute of limitations. The *Monell* claims "arose out of the conduct, transaction, or occurrence" that formed the basis for the earlier claims—Armour's arrest—and thus satisfy the plain language of the Rule. Fed. R. Civ. P. 15(c)(1)(B). The Third Amended Complaint essentially repeats the allegations presented in Armour's earlier complaints, such as the Amended Complaint filed on January 23, 2013 (i.e., within the limitations period). The City was named as a defendant in that complaint, under a theory of *respondeat superior* liability and in an indemnification count. The Amended Complaint included allegations of false

arrest and excessive force against the City Defendant officers. Thus, in the operative complaint, Armour has added a new claim against the City based on the same underlying constitutional violations previously alleged.

Furthermore, the court's research indicates that most courts presented with similar facts have concluded that a *Monell* claim relates back to a complaint alleging the same underlying constitutional injury to the plaintiff. *See, e.g.*, *Triano v. Town of Harrison, NY*, 895 F. Supp. 2d 526, 530 (S.D.N.Y. 2012); *Nash v. Kressman*, No. 11 Civ. 7327(LTS)(RLE), 2013 WL 6197087, at *8 (S.D.N.Y. Nov. 27, 2013); *Henry v. City of New York*, No. CV-07-3965, 2008 WL 906743, at *4 (E.D.N.Y. Apr. 1, 2008) ("[T]he City is already a party to this action and on notice that plaintiff has claims against it arising from the alleged facts."); *Overton v. Se. Penn. Transp. Auth.*, No. Civ. A. 04-904, 2004 WL 1243666, at *3 (E.D. Pa. June 3, 2004) ("Plaintiff's *Monell* claim in [an amended complaint] clearly arises out of the same incident that is the subject of the Original Complaint."); *Estate of Keys v. City of Harvey*, No. 92 C 2177, 1994 WL 687479, at *3-4 (N.D. Ill. Dec. 8, 1994). The court therefore declines to dismiss Armour's *Monell* claims based on the alleged underlying injuries of excessive force and false arrest as barred by the statute of limitations.

B. Sufficiency of the Pleadings

The City further argues that the allegations in Counts 13 and 14 are insufficient to state a *Monell* claim. According to the City, Count 13 alleges only that the Country Club Hills Police Department failed to train the City Defendant officers to truthfully complete police reports and encouraged them to lie to cover up misconduct. It argues that under the pleading standards set out in *Twombly* and *Iqbal*, these conclusory allegations are too vague to state a claim based on an allegedly widespread custom or practice.

The court reads the complaint as a whole and must view it in the light most favorable to Armour. Count 13 refers to the constitutional violations allegedly committed against Armour, as set out in the rest of the complaint. The City does not contest the sufficiency of Armour's underlying false arrest and excessive force claims, and the court has already held that his allegations suffice to state a *Brady*-type due process claim. In addition to the allegations about the City Defendant officers' actions toward him, Armour alleges that the City "had a custom and practice of encouraging Defendant officers to cover up excessive force, falsify sworn police reports, falsify testimony, and threaten witnesses." (Third Am. Compl. ¶ 111.) He further alleges:

> 112. At all times material to this complaint, Defendant Country Club Hills's Police Department, had interrelated de facto policies, practices, and customs which included:
>
> a. the failure to properly train Defendant Officers on truthfully completing sworn police reports, which Defendant Country Club Hills, Defendant Officers, and Defendant Evans [knew] would be used in criminal proceedings.
>
> b. the failure to properly supervise, discipline, monitor, counsel, and otherwise control police officers in the use of firearms, particularly those who are repeatedly accused of excessive force, and the detention of witnesses who were not accused of any crime.
>
> c. a Department-wide custom of encouraging officers and Defendant Evans to lie to cover up excessive force, false arrests, and other unconstitutional misconduct, in order to protect the City and the Defendant officers from civil and criminal liability;
>
> d. failure to train Defendant Officers to use less means of force when attempting to arrest and restrain individuals;

(*Id.* at ¶ 112.) Armour also alleges that the City was deliberately indifferent to the consequences of these practices. (*Id.* at ¶ 114.)

The City is correct that a plaintiff must plead some specific facts supporting a claim that a municipality maintained a policy, custom or practice that caused a constitutional deprivation.

*See McCauley v. City of Chi.*, 671 F.3d 611, 616 (7th Cir. 2011). Moreover, "[a] single isolated incident of wrongdoing by a nonpolicymaker is generally insufficient to establish municipal acquiescence in unconstitutional conduct." *Cornfield v. Consol. High Sch. Dist. No. 230*, 991 F.2d 1216, 1326 (7th Cir. 1993). Armour's complaint includes a great deal of conclusory language about "interrelated policies, practices, and customs." (Third Am. Compl. ¶ 113.) The court disregards these conclusory legal statements. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Courts in this district, however, have allowed *Monell* claims to proceed "even with conclusory allegations that a policy or practice existed, so long as facts are pled that put the defendants on proper notice of the alleged wrongdoing." *Riley v. Cnty. of Cook*, 682 F. Supp. 2d 856, 861 (N.D. Ill. 2010).

Here, Armour has pleaded the facts related to his own injury and then alleged that the City failed to properly train and supervise its officers with regard to the use of force, the completion of reports, and the collection of evidence. He contends that this is sufficient to alert the City to its alleged wrongdoing. The court disagrees. The problem with Armour's allegations is that they encompass virtually all the activities of a police department and every contact it has with the public. Armour has lumped together myriad "customs" and "policies," and the scope of the discovery relevant to his claims is boundless. The allegations are in no way tailored to identify particular police training procedures or policies. In other words, discovery relevant to Armour's allegations would be the epitomy of a fishing expedition. *See Brooks*, 578 F.3d at 581 ("[S]ome factual allegations will be so sketchy or implausible that they fail to provide sufficient notice to defendants of the plaintiff's claim."). Because Armour has failed to plead a *Monell* "custom and practice" claim, the court grants the City's motion to dismiss Count 13 of the Third Amended Complaint. The dismissal is without prejudice because it is possible that the flaw in

14

the claim can be cured. *See Bogie v. Rosenberg*, 705 F.3d 603, 608 (7th Cir. 2013) ("When a complaint fails to state a claim for relief, the plaintiff should ordinarily be given an opportunity, at least upon request, to amend the complaint to correct the problem if possible.").

Count 14 asserts a *Monell* "policymaker" claim, based on Evans's direction of the City Defendant officers to commit the acts that allegedly caused Armour's constitutional injuries. Under such a theory, § 1983 liability attaches only where "a deliberate choice to follow a course of action is made . . . by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986). Armour alleges that Evans "was the person with final policymaking authority" for the police department. (Third Am. Compl. ¶ 116.) The court, however, disregards boilerplate allegations that Evans was a "policymaker" or that she made "policy." *See McCauley*, 671 F.3d at 618. Armour further alleges that the City's Municipal Code granted Evans "authority over all personnel, policies, and direction of the members of the Country Club Hills Police Department. (Third Am. Compl. ¶ 117.)

The City argues that Evans was not a final policymaker for the City of Country Club Hills. Rather, the City Council had the authority to establish policies for the City. But the question before the court at this stage in the proceedings is not whether Evans actually was a final policymaker for the City, but only whether Armour has sufficiently alleged that she had such authority to allow him to proceed with his claim. Even if the City Council, acting through ordinances, could constrain the authority of the City's Chief of Police, it is plausible that Evans exercised at least *de facto* authority with respect to the conduct at issue. The court therefore denies the City's motion to dismiss the *Monell* "policymaker" claim in Count 14. Ultimately, to determine whether Evans was a policymaker for the City, the court will have to consider whether

15

her decisions were constrained by policies of other officials, subject to review (by, for example, the City Council), and within the scope of her delegated authority. *See Valentino v. Vill. of S. Chi. Heights*, 575 F.3d 664, 676 (7th Cir. 2009).[2]

## IV. CONCLUSION

For the reasons stated above, the court denies Evans's motion to dismiss Counts 9 and 10, but clarifies that the claims in those counts may proceed only under a *Brady* theory. Armour's claim against Evans in Count 14 is dismissed. The City's motion to dismiss Count 13 is granted; the dismissal is without prejudice, provided that Armour files a motion to amend the complaint within 21 days of this order. The City's motion to dismiss Count 14 is denied.

ENTER:

/s/
JOAN B. GOTTSCHALL
United States District Judge

DATED: January 8, 2014

---

[2] This claim must proceed under the third prong of *Monell*. Discovery on the claim should be limited to evidence relevant to whether Evans was vested with final policymaking authority. In other words, broad discovery intended to uncover "customs and practices" of the City is not warranted on the basis of the claim.